UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
SHIMON JACOBOWITZ
on behalf of himself and
all other similarly situated consumers

                              Plaintiff,

          -against-


EQUIFAX INFORMATION SERVICES, LLC

                              Defendant.

----------------------------------------------------------

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1.    Plaintiff Shimon Jacobowitz seeks redress for the illegal practices of Equifax Information

      Services, LLC in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq.

      (FCRA) and the New York Fair Credit Reporting Act, NY CLS Gen Bus § 380, et seq.

      (NY FCRA as well as for relief from Defamation of Character.

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

4.    Defendant Equifax Information Services, LLC is a Credit Reporting Agency ("CRA") that

      engages in the business of maintaining and reporting consumer credit information.

5.    Upon information and belief, Defendant Equifax Information Services, LLC's principal

      place of business is located in Atlanta, Georgia.

6.    Defendant Equifax Information Services, LLC is a "Consumer Reporting Agency" (CRA)

      as defined by 15 U.S.C. 1681a(f) et. seq.

### *Jurisdiction and Venue*

7.    This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8.    All conditions precedent to the bringing of this action have been performed.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Shimon Jacobowitz*

10.    Equifax Information Services, LLC is one of the "big three" credit reporting agencies (singular "CRA") in the United States.

11.    Equifax Information Services, LLC sells consumer reports (commonly called "credit reports") about millions of consumers annually.

12.    Equifax Information Services, LLC is regulated by the FCRA.

13.    In furtherance of these goals, the FCRA mandates that a CRA provide consumers, upon request, all the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their files. See 15 U.S.C. §§ 1681g(a), 1681i(a)

14.    Specifically, each CRA is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances. See 15 U.S.C. § 1681g(a).

15.    The term "file," when used in connection with information on any consumer, means "**all** of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." See 15 U.S.C. § 1681a(g) (emphasis added).

16.    Plaintiff is a consumer who is the victim of identity theft and has suffered particularized and concrete harm.

17.   When Plaintiff learned of a fraudulent account that was appearing on his Equifax credit report, Plaintiff began contesting the fraud account.

18.   Plaintiff Shimon Jacobowitz disputed a WV Credit Inc. account #: 883997xxx that appeared on his Equifax credit report directly with Equifax on or about September 7, 2019.

19.   In the said September 7, 2019 dispute, Plaintiff advised Equifax that its credit reporting as to this alleged account was inaccurate in that the account was not opened by the Plaintiff and Plaintiff did not authorize anyone to open this account in his name.

20.   Plaintiff had also notified WV Credit Inc. directly of the fraud.

21.   After the Plaintiff's September 7, 2019 dispute, Equifax had notified Plaintiff that it had initiated an investigation into the said dispute.

22.   Equifax's investigation did not resolve the dispute and Plaintiff subsequently filed a statement of dispute with Equifax on or about September 23, 2019.

23.   Section 1681i(c) of the FCRA provides: "Whenever a statement of a dispute is filed . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

24.   Plaintiff obtained his consumer credit report from Equifax on or about November 7, 2019 and found that the Defendant had not included Plaintiff's statement of dispute in the credit report.

25.   15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

26.   Section 1681i(a) outlines the reinvestigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

27.  Section 1681i(b), in turn, permits the consumer to file a "statement of dispute" with the CRA in the event that the reinvestigation fails to resolve the dispute.

28.  Finally, Section 1681i(c) requires any consumer report produced subsequent to the filing of the statement of dispute to clearly note the dispute "and provide either the consumer's statement or a clear and accurate codification or summary thereof."

29.  Subsequent to Equifax's receipt of the Plaintiff's statement of dispute, Equifax issued consumer reports without in any way indicating to the users of the reports that certain information contained therein was disputed by Plaintiff and failed to include a copy of Plaintiff's statement of dispute.

30.  Equifax intentionally failed to include the statement of dispute with later copies of the Plaintiff's consumer reports.

31.  Plaintiff's September 23, 2019 "Statement of Dispute" letter, sent in response to Defendant's reinvestigation results constitutes a "statement of dispute" under 15 U.S.C. § 1681i(b).

32.  The "Statement of Dispute" letter was sent after Plaintiff's request for a reinvestigation yielded no change in the status of the account on Plaintiff's credit report.  This is precisely the process that § 1681i requires.

33.  Plaintiff clearly provided sufficient detail in his September 23, 2019 "Statement of Dispute" letter to put Defendant on notice as to the nature of the dispute.

34.  The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

35.    Defendant violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit file and then notified the Defendant of the said dispute.

36.    Despite having furnished information from WV Credit Inc. and the dispute from the Plaintiff, Equifax has completely abdicated its obligations under federal and state law and has instead chosen to merely "parrot" whatever its customer, WV Credit Inc. has chosen to say.[1]

37.    Defendant Equifax's subsequent reinvestigation of the item failed to resolve the dispute so the Plaintiff filed a statement of dispute with Equifax and Equifax failed to include the statement of dispute with later copies of the Plaintiff's consumer report.[2]

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing Gorman v. Experian; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

[2] See Cushman v. TransUnion Corp., 115 F.3d 220, 225 (3rd Cir. 1997) (holding that "in order to fulfill its obligation under section 1681i(a) 'a credit reporting agency may be required, in certain [*16] circumstances, to verify the accuracy of its initial source of information.'" (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994)); Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010) ("Trans Union's failure to properly reinvestigate Dixon-Rollins's dispute was not an isolated incident. Indeed, it has repeatedly failed to carry out its statutory duty despite the rejection of the same argument it now repeats and admonishments that its reinvestigations were deficient. In 1997, the Third Circuit instructed Trans Union that it may not just repeat information it receives from the original source, but must do more to verify the credit information. Cushman, 115 F.3d at 225. **Since Cushman was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation**, see e.g., Krajewski, 557 F. Supp. 2d at 616; Crane, 282 F. Supp. 2d at 320; Lawrence, 296 F. Supp. 2d at 589; Saenz v. Trans Union, LLC, 621 F. Supp. 2d 1074, 1083 (D. Or. 2007) (**Trans Union must do more than parrot information received by original source**); Lambert v. Beneficial Mortgage Corp., No 05-5468, 2007 U.S. Dist. LEXIS 33119, 2007 WL 1309542, at *2 (W.D. Wash. May 4, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance. See, e.g., Mullins v. Equifax Info. Servs., LLC, No. 05-888, 2007 U.S. Dist. LEXIS 62912, 2007 WL 2471080, at *7 n. 11 (E.D. Va. Aug. 27, 2007). Thus, **because Trans Union has been warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. See Willow Inn, Inc., v. Public Serv. Mut. Ins. Co., 399 F.3d 224, 232 (3d Cir. 2005) (recidivist behavior relates to defendant's conduct as to non-parties).") (emphasis added); see also Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993) ("In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."). The court in Cushman noted that to only require the credit reporting agency to go to the furnisher of information would replicate the requirements of section 1681e(b), and such a reading would render the two sections largely duplicative of each other. Id. Receiving notification of a dispute from a customer shifts the responsibility of reinvestigation onto the credit reporting agency, and the statutory responsibility imposed on the credit report agency "**must consist of something more than merely parroting information received from other sources...**Given the standard articulated in Cushman and Experian's claimed sole reliance on the information it received from HSBC, a jury could conclude that Experian did not reinvestigate Plaintiff's dispute in accordance with the requirements of 15 U.S.C. § 1681.") (emphasis added); Carlisle v. Nat'l Commercial Services, Inc., 2016 WL 4544368, at *7 (N.D. Ga. July 22, 2016), adopted, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) (when consumer disputes and CRA conducts cursory investigation, reporting of same

38.    Inaccurate information was included in the Plaintiff's credit report.

39.    The inaccuracy was due to the Defendant's failure to follow reasonable procedures to assure maximum possible accuracy.[3]

40.    The Plaintiff suffered injury.

41.    The consumer's injury was caused by the inclusion of the inaccurate entry.

42.    At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees, who were acting within the scope and course of its employment, and under the direct supervision and control of the Defendant herein.

43.    At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

44.    Discovery of the violations brought forth herein occurred in the month of September, 2019 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

---

dispute information violates § 1681e(b)); Lazarre v. JP Morgan Chase Bank (Lazarre II), 780 F. Supp. 2d 1330 (S.D. Fla. 2011) (violation of § 1681i(a) logically entails violation of § 1681e(b); CRA that conducts unreasonably cursory reinvestigations would not be following reasonable procedures to ensure maximum possible accuracy); Burke v. Experian Info. Serv., 2011 WL 1085874, at *7 (E.D. Va. Mar. 18, 2011) (CRA could be liable for § 1681e(b) violation for failing to conduct reasonable investigation); Campbell v. Experian Info. Solutions, Inc., 2009 WL 3834125 (W.D. Mo. Nov. 13, 2009); Wilson v. CoreLogic Saferent, LLC, No. 14-CV-2477 (JPO), 2017 U.S. Dist. LEXIS 162928, at *8 (S.D.N.Y. Sep. 29, 2017) ("**Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.'**" Id. (quoting *Gorman v. Experian Info. Solutions, Inc.*, No. 07 Civ. 1846, 2008 U.S. Dist. LEXIS 94083, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)); see also Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (Because summary judgment is not appropriate unless the reasonableness of the CRA's procedures is "beyond question," reasonableness "is treated as a factual question even when the underlying facts are undisputed.") (emphasis added)

[3] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

## CLASS ACTION ALLEGATIONS

45.     When a consumer notifies a debt collector that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file" the debt collector must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). As part of the investigation, the debt collector must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer…." 15 U.S.C. § 1681i(a)(2)(A).

46.     If a consumer disputes an account that appears on his or her credit, the debt collector must investigate to determine whether the account pertains to that consumer and should be part of that consumer's credit history. As part of the investigation, the debt collector must notify the source of the disputed account about the consumer's dispute and provide the source with all the relevant information provided by the consumer. Alternatively, the debt collector can delete the derogatory information.

47.     Defendant Equifax has long been aware of its obligations to properly investigate consumer disputes. It had the benefit of plain, unambiguous statutory language requiring a reasonable investigation of "the completeness or accuracy of **any item** of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

48.     The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like the Defendant violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a

consumer disputes "information contained in his file." Collins v. Experian Info. Sol's, Inc., 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

49. Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); Morris v. Equifax Info. Serv's, LLC, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982); Dennis v. BEH-1, LLC, 520 F.3d 1067 (9th Cir. 2008); Steed v. Equifax Info. Serv's, LLC, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

50. Defendant's failure to investigate disputed account information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

51. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Defendant's failure to comply with 15 U.S.C. § 1681i(a)(1) and (2).

52. This cause of action is brought on behalf of Plaintiff and the members of a class.

53. The class consists of all persons whom Defendant's records reflect resided in the State of New York, who notified Equifax of a dispute of an account appearing in their Equifax credit files and to whom Equifax failed to include the statement of dispute in subsequent

credit reports, during the period beginning two years prior to the filing of this action and through the time of judgment.

54.    The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Equifax, Equifax has represented that it receives approximately 10,000 disputes a day, amounting to millions of disputes each year. Accordingly, Plaintiff estimates that each class has thousands of members.

55.    There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Equifax violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it; and whether the violations were willful.

56.    Plaintiff's claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theory: a dispute to Experian Information Solutions, Inc. regarding a dispute, which Experian Information Solutions, Inc. did not investigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2). Plaintiff received results of his disputes from Equifax with standard form language. Plaintiff's claim is typical of the two-year class because he made his dispute within two years.

57.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue these claims.

58.    This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient

adjudication of this controversy. Equifax's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Equifax, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Equifax's practices.  Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

59.   This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## AS AND FOR A FIRST CAUSE OF ACTION
*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*
**Failure to Timely Delete Fraudulent Accounts**

60.   At all times mentioned in this Complaint, Equifax was a "consumer reporting agency," as referred to in 15 U.S.C. § 1681a(e).

61.   When Plaintiff learned of a fraudulent account that were appearing on his Equifax report, Plaintiff began contesting the fraud account.

62.   Plaintiff had given Equifax notice of the dispute over the existence of the fraudulent

account and the existence of dispute over the reporting of the account.

63.    Plaintiff is informed and believes that Equifax did not fully and timely give notice to the furnisher, WV Credit Inc. within five days of the time Plaintiff gave notice to the credit reporting agencies as required by 15 U.S.C. § 1681i (a)(2).

64.    Defendant had notice of the identity theft problems from Plaintiff, and had notice occurring by virtue of its own investigation and during its communication with the furnisher.

65.    Despite repeated notice of the fraudulent credit card issuance, the continuing existence of the fraudulent accounts, the reporting of the fraudulent accounts, the existence of dispute over the reporting of the accounts and the identified risk of further account issuance based on the use and/or reporting of the fraudulent address or any reporting of the fraudulent account, Defendant:

   a) failed to timely delete all reference to the fraudulent account;

   b) failed to prevent and allowed furnisher WV Credit Inc. to report the false account information and included the false account information in the credit file available concerning the Plaintiff;

   c) failed to itself conduct meaningful investigation of the false information and disputes identified by the Plaintiff;

   d) failed to conduct meaningful investigation to identify any false account references being reported to the credit reporting agencies similar or related to the disputes identified by Plaintiff and failed to give notice to Plaintiff of the additional items for which correction was necessary and any information or request needed from Plaintiff prior to blocking such additional false

information;

e)   failed to conduct meaningful investigation as to the quality of response of the credit information furnisher to the inquiries of the credit reporting agencies regarding the false information and disputes identified by Plaintiff and instead deferred to the inadequate investigation and responses by the credit information furnishers despite knowledge of the probability of lack of thorough investigation upon initial dispute notice;

f)   failed to properly acknowledge and process the notice of the dispute given by Plaintiff and failed to provide reasonable notice of the results of investigation of the dispute.

66.   In such manner and otherwise the credit agency, Equifax, negligently failed to comply with the requirements of Fair Credit Reporting Act (FCRA) including but not limited to:

a)   failing to comply with the requirements in 15 USC § 1681e(b);

b)   failing to comply with the requirements in 15 USC § 1681i;

c)   failing to comply with the requirements in 15 USC § 1681b(a);

d)   failing to comply with the requirements in 15 USC § 1681g;

e)   failing to comply with the requirements of 15 USC § 1681n; and

f)   failing to comply with the requirements of 15 USC §1681o.

67.   Defendant Equifax failed to properly reinvestigate Plaintiff's disputes, performed perfunctory and essentially useless investigations and/or reinvestigation resulting in its incorrect verification of the false reports and continued to prepare and issue false consumer reports in violation of the Fair Credit Reporting Act. 15 U.S.C. 1681i.

68.   As a proximate result of Defendant's failure to investigate and/or reinvestigate the false,

derogatory credit report entries, such entries remained, and Plaintiff continued to suffer injury from the identity theft.

69.  As a further proximate result of the acts alleged herein of Defendant, Plaintiff has been harmed in that Plaintiff has incurred attorney's fees and costs necessary to pursue correction of his credit record and protection from further injury and to pursue this claim, and therefore Plaintiff is entitled to his reasonable attorney's fees and costs incurred in prosecution of this claim as allowed pursuant to 15 U.S.C. §1681o(a), 15 USC §1681n(a) or otherwise allowed before this court.

70.  The acts alleged herein of Defendant was willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiff's rights and were intended to or were known likely to oppress and cause injury to Plaintiff and were done within the course and scope of the Defendant's employees' employment and/or managerial authority or pursuant to company policy.

## LIABILITY AND DAMAGES

71.  Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

72.  At all times mentioned in this Complaint, various employees and/or agents of Defendant was acting as agents of Defendant and therefore Defendant was liable to for the acts committed by its agents and/or employees under the doctrine of respondent superior.

73.  At all times mentioned in this Complaint, employees and/or agents of Defendant was acting jointly and in concert with Defendant, and Defendant is liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendant and its agents or employees were engaged in a common business venture and were acting jointly and in concert.

74. Plaintiff believes and asserts that he is entitled to $1,000.00 in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

75. Plaintiff believes and asserts that Defendant's actions were willful and intentional.

76. Because Defendant's acts and omissions were done willfully, Plaintiff requests punitive damages.

77. Plaintiff requests punitive damages against Defendant in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

78. For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

79. Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

80. Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION

### *(New York Fair Credit Reporting Act)*

81. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

82. Defendant Equifax failed to delete information found to be inaccurate, reinserted the information without following the NY FCRA, or failed to properly investigate Plaintiff's disputes.

83. Defendant Equifax failed to promptly re-investigate and record the current status of the disputed information and failed to promptly notify the consumer of the result of its investigation, its decision on the status of the information, and his rights pursuant to this section in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(a).

84. Defendant Equifax failed to clearly note in all subsequent consumer reports that the

account in question is disputed by the consumer in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(c)(3).

85.    As a result of the above violations of the N.Y. FCRA, Equifax is liable to Plaintiff for actual damages, punitive damages, statutory damages, attorney's fees and costs.

### AS AND FOR A THIRD CAUSE OF ACTION

*(Negligence; Negligent Issuance of Credit; Negligent Enablement of Identity Theft; Negligent Publication of False Information Regarding Financial Matters; Negligent Investigation and Handling of Credit Account Fraud - against the Defendant)*

86.    Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

87.    Defendant owed duties of reasonable care to Plaintiff, including having a pre-existing contractual credit relationship with Plaintiff, owing Plaintiff a duty of care with regard to the contractual credit relationship being created by the issuance of the credit cards, and due to the foreseeable impact on Plaintiff of any contractual credit relationship established with the identity thief.

88.    Defendant had a duty to Plaintiff to not benefit itself at unnecessary risk to Plaintiff by negligently issuing credit without reasonable investigation.

89.    Defendant breached its duty to Plaintiff by negligently failing to institute practices and policies to minimize the risk of such negligent issuance of credit.

90.    Defendant, in doing the acts alleged herein, including the processing of credit applications without reasonable investigation, and failing to provide warnings as to the fraudulent address, negligently enabled the identity thief in the perpetration of the identity theft.

91.    Defendant breached such duty to Plaintiff in that Defendant engaged in a consistent policy and pattern of practice of benefitting itself by negligently issuing credit without reasonable

investigation despite the unreasonable risk to Plaintiff and others.

92.    Defendant Equifax prepared, issued and distributed and failed to correct consumer credit reports concerning Plaintiff which included inaccurate information, including information related to accounts regarding the WV Credit Inc. account.

93.    Defendant and its employees had a duty to act reasonably as to Plaintiff in the course of the issuance of credit, investigation and credit reporting conduct and fraud actions alleged herein and to protect Plaintiff and see that he was safe from harm by Defendant.

94.    Defendant failed to exercise reasonable care and prudence in the reporting and collection of the disputed account, each subsequent reporting and re-reporting, the handling and reinvestigation of data about Plaintiff, and attempted collection of the subject account, all made the subject of this lawsuit, and which consequently caused damaged to Plaintiff.

95.    The conduct of Defendant Equifax and its employees as alleged above was negligent, careless and wrongful. Management and supervisors of Defendant's employees conducted, confirmed and ratified the negligent acts of Defendant and its employees with a careless disregard for the effects of its conduct on Plaintiff and others.

96.    In performing the acts alleged above, and generally in relations, interactions and communications with Plaintiff Defendant and its employees failed to exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances, thereby proximately causing the damages alleged in this complaint.

97.    Defendant and its employees breached its duty to Plaintiff by the acts and omissions herein alleged.  Said acts and omissions were done negligently and Defendant knew, or should have known, that such acts and omissions would injure Plaintiff.

98.    Defendant's acts alleged herein had the effect of negligently inflicting severe emotional

distress upon Plaintiff.

99.    Defendant as aware or reasonably should have been aware that the acts would have such effect of inflicting severe emotional distress.

100.   The acts alleged herein of Defendant proximately caused Plaintiff to invasion of privacy, humiliation, mental anguish, and emotional distress and losses as set forth herein or as to be established at trial.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

    a)  Actual damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    b)  Punitive damages pursuant to 15 U.S.C. § 1681n;

    c)  Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    d)  Attorney's fees pursuant to N.Y. Gen. Bus. Law § 380-m; and

    e)  Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
December 12, 2019

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein (AF-9508)

# EXHIBITS

SEPTEMBER 23, 2019

# STATEMENT OF DISPUTE

ACCORDING TO MY RIGHTS UNDER SECTION 1681-I(B) OF THE FCRA, I HEREBY DISPUTE THE WV CREDIT INC. ACCOUNT THAT IS BEING REFLECTED ON MY MOST RECENT EQUIFAX CREDIT ACCOUNT.

THE WV CREDIT INC. ACCOUNT 883997XXX IS NOT MINE.

SHIMON JACOBOWITZ

my    shimon jacobowitz      0

Home

**YOUR CREDIT**

**Credit Report**  ⌄

Summary

Revolving Accounts

Mortgage Accounts

**Installment Accounts**

Other Accounts

Consumer Statements

Personal Information

Inquiries

Public Records

Collections

Your Rights

**YOUR IDENTITY**

Freeze

Fraud & Active Duty Alerts

──────

Dispute Center

Credit Report Date

| Nov 07, 2019 ▼ |
| --- |

You still have **1 of 2 free Equifax credit reports** available before **September 23, 2020**.

Get my free credit report

‹ Back

# VW CREDIT INC
Report Date: Nov 07, 2019

# CLOSED
Account Status

Closed accounts stay on your credit report for up to 10 years since the date of last activity. Negative information such as late payments or collections, generally stay on your Equifax credit report for up to 7 years from the date of first delinquency.

**Details**    Payments

## Overview

| | | | |
| --- | --- | --- | --- |
| Account Number | xxxxx 5680 | Months Reviewed | 29 |
| Account Status | PAYS_AS_AGREED | Activity Designator | PAID_AND_CLOSED |
| Owner | JOINT | Terms Frequency | MONTHLY |
| Account Type | INSTALLMENT | Term Duration | 36 MONTHS |
| Creditor Classification | | Purchased From | |
| Loan Type | AUTO_LEASE | Sold To | |
| Original Creditor Name | | | |

## Balance and Amounts

## Account Dates

| | | | |
| --- | --- | --- | --- |
| Balance | $0 | Date Opened | Oct 01, 2010 |
| Credit Limit | | Date Reported | Nov 26, 2014 |
| High Credit | $13,062 | Date of Last Activity | Apr 01, 2013 |
| Available Credit | | Date of First Delinquency | |

## Comments and Contact

LEASE - FULL TERMINATION

For questions regarding this account please contact:

**VW CREDIT INC**
2333 WAUKEEGAN RD
DEERFIELD, IL 60015
(847) 371-4310

my

shimon jacobowits   0

Home

**YOUR CREDIT**

**Credit Report** ⌃

Summary

Revolving Accounts

Mortgage Accounts

**Installment Accounts**

Other Accounts

Consumer Statements

Personal Information

Inquiries

Public Records

Collections

Your Rights

**YOUR IDENTITY**

Freeze

Fraud & Active Duty Alerts

Dispute Center

---

Credit Report Date

| Nov 07, 2019 ▾ |
| --- |

You still have **1 of 2 free Equifax credit reports** available before **September 23, 2020**.

**Get my free credit report**

‹ Back

# VW CREDIT INC

Report Date: Nov 07, 2019

# CLOSED
## Account Status

Closed accounts stay on your credit report for up to 10 years since the date of last activity. Negative information such as late payments or collections, generally stay on your Equifax credit report for up to 7 years from the date of first delinquency.

**Details**        Payments

## Overview

| | | | |
| --- | --- | --- | --- |
| Account Number | xxxxx 7589 | Months Reviewed | 22 |
| Account Status | CHARGE_OFF | Activity Designator | |
| Owner | INDIVIDUAL | Terms Frequency | MONTHLY |
| Account Type | INSTALLMENT | Term Duration | |
| Creditor Classification | | Purchased From | |
| Loan Type | AUTO_LEASE | Sold To | |
| Original Creditor Name | | | |

## Balance and Amounts

| | |
| --- | --- |
| Balance | $13,592 |
| Credit Limit | |
| High Credit | |
| Available Credit | |

## Account Dates

| | |
| --- | --- |
| Date Opened | Feb 12, 2014 |
| Date Reported | Oct 03, 2019 |
| Date of Last Activity | |
| Date of First Delinquency | Aug 01, 2014 |

## Comments and Contact

CONSUMER DISPUTES THIS ACCOUNT INFORMATION

CONSUMER DISPUTES AFTER RESOLUTION

CHARGED OFF ACCOUNT

For questions regarding this account please contact:

**VW CREDIT INC**
2333 WAUKEGAN RD
DEERFIELD, IL 60015
(847) 371-4310